NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued September 12, 2016
Decided December 19, 2016

Before

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 16-1440 <br><br> JACK A. SHEETS, <br>     *Plaintiff-Appellant,* <br><br> *v.* <br><br> INTERRA CREDIT UNION, <br>     *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. <br><br> No. 1:14-CV-265 JD <br> Jon E. DeGuilio, *Judge.* |

### Order

Jack Sheets worked at Interra Credit Union between 1976 and 2013, for most of that time as its president and CEO. His employment ended after Interra's Board concluded (on the basis of multiple complaints from senior staff) that he had become disorganized, forgetful, and confused, and as a result could no longer lead the management team. Sheets contends that Interra's decision violates the Americans with Disabilities Act. The district court granted summary judgment to Interra, however, finding that undisputed facts show that Sheets could no longer do his job. 2016 U.S. Dist. LEXIS 10668 (N.D. Ind. Jan. 29, 2016).

We affirm for substantially the reasons in the district court's opinion, though we add a few words about Sheets' two principal appellate arguments.

Interra hired Venture International in 2007 to assess its operations, and Venture then expressed reservations about Sheets' performance. By January 2011, when Sheets suffered a cerebral hemorrhage and took an extended leave under the Family Medical Leave Act, Venture's doubts about his capacity had become more serious. Sheets gave Venture access to his medical records, and he contends that Interra held these records against him, in violation of confidentiality provisions in the ADA. 42 U.S.C. §12112(d)(3), (4). Sheets contests the district court's conclusion that he released his medical records voluntarily. We do not think that this issue matters, however, because nothing in the record suggests that the medical records caused Sheets any injury—and, what is more, the statute allows disclosure to supervisors and managers for the purpose of ascertaining necessary work restrictions and accommodations. See §12112(d)(3)(B)(i).

At the end of his FMLA leave Sheets was reinstated. Venture and co-workers reported that his performance improved. He received a substantial raise. But new reports of mental difficulties surfaced in fall 2012, when co-workers began to report that Sheets could not think strategically, that he often "functions as if he is lost", and that he "had a difficult time understanding things". The Board met in January 2013 to discuss these reports and observed for itself that Sheets could not manage time or address issues effectively when attempting to reply to these concerns. The record shows conclusively that it was these problems with Sheets' performance in 2012 and 2013, and not medical records from 2011, that led the Board to end his employment as CEO.

These facts also show that the discharge was substantively proper under the ADA. Mental changes meant that Sheets was no longer able to engage in executive functioning. Sheets insists that "[w]hether [he] actually had cognitive impairment is a matter requiring expert opinion." But the question for the Board was not the medical reason for Sheets' problems but how his condition—whatever its cause—affected his ability to do his job. The Board and members of the management team could observe those effects in the workplace. Sheets does not contend that the Board is misrepresenting the reasons for its decision, and there is therefore no basis to upset the district court's decision.

AFFIRMED